## GILL v. GILL.

DIVORCE—EXTREME CRUELTY—EQUITY—CLEAN HANDS.

On a bill for divorce filed by the husband on the ground of extreme cruelty, in that defendant indulged in intoxicating liquor to the great mortification and humiliation of plaintiff, evidence that plaintiff knew of defendant's habits before he married her, and that he was addicted to the same habits both before and after marriage, *held*, to require dismissal of the bill, since he does not come into court with clean hands and his case is not one that appeals to the conscience of the court.

Appeal from Genesee; Black (Edward D.), J. Submitted January 12, 1921. (Docket No. 102.) Decided March 30, 1921.

Bill by Albert G. Gill against Georgianna Gill for a divorce. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*Carton, Roberts & Stewart*, for plaintiff.
*Brownell, McBride & Gault*, for defendant.

WIEST, J. The plaintiff filed the bill for divorce herein charging extreme cruelty on the part of defendant, in that she indulged in intoxicating liquor to the great mortification and humiliation of plaintiff after he had admonished her against the same, and the unpleasant reputation arising therefrom and the degrading social standing to which it would relegate them; and that her indulgence in liquors brought to their home women of similar tastes and inclinations with quantities of liquor and thus obscured the "finer qualities of womanhood which make the home and its environment a shelter for virtue and the principles of good citizenship." Plaintiff charged in the bill that this indulgence continued until it became unbearable for him to longer remain with his wife.

Defendant appeared and by answer denied the charges and alleged that plaintiff had been addicted to the excessive use of intoxicating liquors for some time prior to his marriage to the defendant, and during the time he lived with her he was frequently intoxicated, and while in that condition left defendant's home, not informing defendant where he was going, or what his intentions were.

Defendant further claims that she did not hear from her husband until some time in October, 1916, when he came to her apartment in the city of Pittsburgh, Pennsylvania, in a drunken condition and attempted to gain admittance, but by reason of his condition, defendant refused to admit him, and called one Dr. James I. Johnston, who was a brother-in-law of plaintiff, who had him committed to the Mercy hospital in the city of Pittsburgh for a period of two weeks to undergo treatment; that at the end of two weeks arrangements were made whereby plaintiff was sent to a sanitarium at Warren, Pennsylvania, to be treated as an alcoholic patient under Dr. Mitchell and he remained there for a period of about six months;

that after plaintiff was discharged from that institution he disappeared and defendant did not hear from him, or receive anything from him by way of support, until he was brought back to the city of Pittsburgh, where an order was made by the county court of Allegheny county for her support and maintenance.

Defendant also denied that since their said marriage she has been guilty of extreme cruelty, and denied that while she and her husband were living together she indulged in intoxicating liquor to the great mortification and humiliation of her husband, but on the contrary averred that her husband did at all times while they were living together indulge in intoxicating liquor to her great mortification and humiliation.

At the time the bill was filed plaintiff was 40 years of age. The parties were married in 1916 at Youngstown, Ohio, and lived together about three weeks. Both had had previous matrimonial experiences, and had been divorced from their former mates.

The case was heard in open court and both parties and their witnesses gave testimony. At the conclusion of the proofs the learned circuit judge granted a divorce as prayed for by plaintiff, and the case is brought here on appeal by defendant.

The parties first met in 1910 in a sporting house in Pittsburgh and before the plaintiff was divorced by his first wife. The acquaintance there formed was kept up until they were married on August 24, 1916. Being residents of Pittsburgh they had to make a false representation to obtain a license to marry in Ohio. He claims the marriage was an incident of a drunken carousal by himself and defendant. This she denies. He admits that he knew her reputation and claims that she was his companion before marriage only when he was drunk.

Previous to the marriage he had been much addicted to the drink habit and kept it up after marriage.

After marriage he claims that he realized the position he had placed himself in by marrying such a woman and found it unbearable. He knew she drank before the marriage and testified that he would not say that she drank any more or less after the marriage than she did before.

About three weeks after they were married he went to Philadelphia and shortly thereafter returned to Pittsburgh, and called up his wife and asked her to meet him at the hotel, and while she was on her way to the hotel he went to their home and took poison, intending to kill himself, and then called a doctor and was sent to Mercy hospital, where he remained about two weeks, and from there he went to Warren, Pennsylvania, as a patient in the hospital there, as he says to get away from and be cured of the drink habit. He was at the Warren State hospital about six months, leaving there in April, 1917, and went to Flint, Michigan, without letting his wife know where he was, and in April, 1918, he entered the military service at Flint as a single man and went to France, where he saw no action, and was discharged from the service in February, 1919.

While in the hospital at Warren he wrote his wife frequent and endearing letters, wholly inconsistent with his charges now made for divorce, and he gives the heartless excuse that he wrote the letters because he had to do something, and while he wrote them he did not intend to go back and live with her, and says that when he stated in the letters that he intended to go back to her again and live with her he no doubt wrote foolish things under the lonesomeness there.

When he left the hospital he kept his whereabouts a secret from his wife, and never supported her after the marriage, except for the short time they lived together.

While in Flint he was arrested for wife desertion

and nonsupport and taken back to Pittsburgh, where he pleaded guilty to the charges, and was made to pay her a monthly amount.

He says when he went to the hospital he had some affection for the woman, but it was the result of a carousal and not the result of deliberate action on his part.    He testified:

"While I was in the hospital, I had an opportunity to begin to find myself and think clearly which I had not done before, but still I left home because of the unbearable surroundings and extreme cruelty; because of the condition that was there.    I don't know how many times liquor was brought into the house during the three weeks we lived together.    I cannot say that it was more than twice.    I did see some one drinking in the house during the three weeks.    I saw quite a few of them.    I was drunk during these three weeks. Possibly more than once under the influence of liquor. I do not think I was as much to blame for the liquor being in the house as was my wife."

The evidence clearly shows that he brought liquor to the house.

While at the State hospital he wrote his wife on October 22, 1916, as follows:

"I am inclosing the church check properly indorsed and only wish I could add two 00 to the 15 so that neither you nor I need worry until I am on my feet again.    However, I can't do that and I am trying not to worry and your brave words of hope and encouragement help me a lot.

"The way may look dark and rough, now, George, but I am satisfied that something better is to come out of this trouble or I could not and would not stay here for a day.    Just keep up your courage, old lady, and help me to keep mine.

"I sang a little this afternoon and among the songs Mrs. Avery—the nurse on this ward—had was 'Memories.'    I tried to sing it but memories of happy hours crowded so strongly over me that it was all I could do to get through.    I can see the apartment this minute, you sitting on the end of the couch with your

feet tucked under you—and can hear the Victrola—
and oh, I wish I were there with you."

On November 9th he wrote:

"I wish I could be in Pgh. this Saturday so that you
and I might take in the WJ-Pitt game. Last year I
saw it and for the first time in as long as I can remem-
ber, I was absolutely sober. I feel now that I am sober
for all time; not only sober, but altogether through
with drink for all time.　*　*　*

"I certainly have been wishing for you lately. * * *

"Wish I could tuck myself into this letter and pop
out when you open it, but if I could have a wish grati-
fied it would be to be with you at this minute instead
of so many miles away."

Some little time after he entered the hospital he
wrote his wife as follows:

"Dear Old Girl:

"I did not think I would write you tonight but I
can't turn in without a final word with you.

"Already I feel lonesome—have since the moment I
stepped off the train and I am going to miss you more
than a little bit, dear girl of mine. I can't tell you in
words how I appreciate your Xmas gift to me—your
coming here and making the forty-eight hours just
passed such happy ones. Glad you came? Yes, glad
beyond words and our visit together has done much to
put heart into me for the fight we shall wage in the
future for success and happiness. I feel tonight as
never before that we shall win both, and even though
we do not startle the world financially, yet I am sure
that we shall attain true success which to me does not
consist in accumulation of vast wealth, but of living
honorably and honestly with all the necessities and
some of the luxuries of life together with contentment,
which of necessity includes happiness.

"I have made many mistakes in the past and many
failures but, as I told you today, I now feel as though
those evil days are gone forever and that the future
holds much which can and will be taken and kept.

"I wish you could look into my mind and heart and
there read what I feel as I think of what you are doing

and propose to continue doing in order that we may be together. You make me feel very small, George, and as you said I'm afraid I am very foolish. I know I have been in the past but from now on I shall try to bury self."

Later he wrote his wife:

"I thought I had made my position clear in my last letter and I really do not know what I can add to it, but I shall try in as few words as possible to outline it. It is simply this, that I feel that it is impossible for us to live together and be happy and that it would be folly to do so unless there was a reasonable chance for happiness and reciprocated affection. The months I have spent here away from you have proven to me beyond a doubt that such a condition is impossible.

"When you say someone has come between us you are partly right, but not in the way you think. It would be more correct to say that you came between me and another, and even though because of this I can never hope for that which I once planned, yet always will that stand as a barrier between us. That is what I meant when I said you can never hold a wife's true place in my thoughts and affections. I have made no accusations to or about you and have no thought of so doing. As I said to you before I blame myself as much and more than I do you and if as a result of our mistake you shall be unhappy I am even more so, and ask you to try to forgive me."

At the time he wrote the endearing letters to his wife he then knew all he now asserts as grounds for a divorce, and he cavalierly dismisses his letters as foolish things actuated by lonesomeness.

The plaintiff admits that he met the woman he married in a sporting house, knew her habits were like his own; that following the marriage he got drunk and was so addicted to the habit of getting intoxicated that he tried to kill himself; that three weeks after marriage he had to enter an institution as an inebriate; that he deserted his wife, was arrested therefor and pleaded guilty, and now he asks that we hold it grounds

for divorce because his wife let liquor obscure the "finer qualities of womanhood which make the home and its environment, a shelter for virtue and the principles of good citizenship," and because her indulgence in intoxicating liquor while they lived together caused him great mortification and humiliation and made it unbearable for him to live with her.

We have passed by her denial of his charges feeling that under the testimony of the plaintiff himself he has not come into court with clean hands. There is nothing in his case appealing to the conscience of the court and the decree entered below is reversed and the bill dismissed, with costs of both courts to appellant.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.